# Exhibit A

 **CT Corporation**

**Service of Process Transmittal**
04/12/2018
CT Log Number 533149236

TO:     Bob Manzi
        Clarity Media Group, Inc.
        555 17th St
        Denver, CO 80202-3950

RE:     **Process Served in District of Columbia**

FOR:    The Washington Newspaper Publishing Company, LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | JOSEPH SCHMIDT, Pltf. vs. The Washington Newspaper Publishing Company, LLC, etc., Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, First Set of Interrogatories, First Request, Notice(s) |
| **COURT/AGENCY:** | FIFTEENTH JUDICIAL CIRCUIT COURT - PALM BEACH COUNTY FLORIDA, FL
Case # 502018CA002509XXXXMBA1 |
| **NATURE OF ACTION:** | WASHINGTON EXAMINER's failure to publish a retraction as require by Fla. Stat. 770.02. |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Washington, DC |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/12/2018 at 14:08 |
| **JURISDICTION SERVED :** | District of Columbia |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days a after service, exclusive of the day of service (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | Jack Scarola
Searcy Denney Scarola Bamhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
561) 686-6300 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780118909131

Image SOP

Email Notification,  Richard M Jones  rick.jones@tac-denver.com

Email Notification,  Ceci Oertli  ceci.oertli@tac-denver.com

Email Notification,  Bob Manzi  bmanzi@claritymg.com |
| **SIGNED:**
**ADDRESS:**

**TELEPHONE:** | C T Corporation System
1015 15th St NW Ste 1000
Washington, DC 20005-2621
202-572-3133 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Filing # 70257734 E-Filed 04/04/2018 05:04:41 PM

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT, IN AND
FOR PALM BEACH COUNTY, FLORIDA.

JOSEPH SCHMIDT,

      Plaintiff,

vs.

THE WASHINGTON NEWSPAPER
PUBLISHING COMPANY LLC d/b/a THE
WASHINGTON EXAMINER,

      Defendants.

_____/

CASE NO.: 50-2018-CA-002509-XXXX-
MB-AI

### $UMMONS:

THE STATE OF FLORIDA
To Each Sheriff of the State:

YOU ARE COMMANDED to serve this Summons and a copy of the Complaint, Interrogatories,
Request to Produce and Notice of Taking Videotape Deposition in this action on Defendant:

**THE WASHINGTON NEWSPAPER PUBLISHING
COMPANY LLC d/b/a WASHINGTON EXAMINER
BY SERVING:  CT CORPORATION SYSTEMS
1015 15TH ST. #1000
WASHINGTON DC 20005**

Each Defendant is required to serve written defenses to the Complaint, Interrogatories, Request to
Produce on Jack Scarola, Esquire and Andrea A. Lewis, Esquire, Plaintiff's attorneys, whose
address is Searcy Denney Scarola Barnhart & Shipley, P.A., 2139 Palm Beach Lakes Boulevard,
West Palm Beach, Florida 33409, within 20 days after service of this Summons on that Defendant,
exclusive of the day of service, and to file the original of the defenses with the Clerk of Court,
Palm Beach County Courthouse, Circuit Civil Division, 205 N. Dixie Highway, West Palm Beach,
FL 33401, either before service on plaintiffs' attorney or immediately thereafter.  If a defendant
fails to do so, a default will be entered against that defendant for the relief demanded in the
Complaint.

DATED on     Apr 05 2018    , 2018.

CLERK OF THE CIRCUIT COURT (SEAL)

BY: _Shannon Fatu_

Deputy Clerk   SHANNON FATU

Schmidt, Joseph vs. The Washington Newspaper Publishing Company LLC d/b/a Washington Examiner
Case No.: 50-2018-CA-002509-XXXX-MB-AI
Summons - The Washington Newspaper Publishing Company LLC d/b/a Washington Examiner
Page 2 of 2

## AMERICANS WITH DISABILITIES ACT

"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Tammy Anton, Americans with Disabilities Act Coordinator, Palm Beach County Courthouse, 205 North Dixie Highway West Palm Beach, Florida 33401; telephone number (561) 355-4380 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."

"Si usted es una persona minusválida que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda.   Tenga la amabilidad de ponerse en contacto con Tammy Anton, 205 N. Dixie Highway, West Palm Beach, Florida 33401; teléfono número (561) 355-4380, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711."

"Si ou se yon moun ki enfim ki bezwen akomodasyon pou w ka patisipe nan pwosedi sa, ou kalifye san ou pa gen okenn lajan pou w peye, gen pwovizyon pou jwen kèk èd. Tanpri kontakte Tammy Anton, kòòdonatè pwogram Lwa pou ameriken ki Enfim yo nan Tribinal Konte Palm Beach la ki nan 205 North Dixie Highway, West Palm Beach, Florida 33401; telefòn li se (561) 355-4380 nan 7 jou anvan dat ou gen randevou pou parèt nan tribinal la, oubyen imedyatman apre ou fin resevwa konvokasyon an si lè ou gen pou w parèt nan tribinal la mwens ke 7 jou; si ou gen pwoblèm pou w tande oubyen pale, rele 711."

Filing # 70257734 E-Filed 04/04/2018 05:04:41 PM

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT FOR
PALM BEACH COUNTY, FLORIDA

JOSEPH SCHMIDT,

      Plaintiff.

vs.

THE   WASHINGTON   NEWSPAPER
PUBLISHING   COMPANY   LLC   d/b/a
WASHINGTON EXAMINER,

      Defendant.

_____/

CASE NO.: 50-2018-CA-002509-XXXX-MB-AI

### AMENDED COMPLAINT

Plaintiff, JOSEPH SCHMIDT, by and through the undersigned attorneys and sues

Defendant, THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a

WASHINGTON EXAMINER, a Foreign Corporation, and alleges:

### PARTIES, JURISDICTION, AND VENUE

1.    This is an action for damages in excess of $15,000, exclusive of interest, costs, and

attorneys' fees.

2.    Defendant THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC

d/b/a WASHINGTON EXAMINER is a Foreign Corporation. The principal address of the

corporation is 1152 15th St. Northwest Suite 200, Washington, DC 20005. THE WASHINGTON

NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER is a digital

and print news publication that has subscribers and readers all over the nation, including in Palm

Beach County, Florida.

3.    THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a

WASHINGTON EXAMINER regularly conducts business in Palm Beach County, Florida.

AMENDED COMPLAINT
Schmidt, Joseph vs. The Washington Newspaper Publishing Company, LLC d/b/a Washington Examiner
Case No.: 50-2018-CA-002509-XXXX-MB-AI
Page 2 of 16

    4.    THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER published a photo of JOSEPH SCHMIDT in a highly defamatory article. Above JOSEPH SCHMIDT's photo, THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER wrote the words "Navy SEAL charged with making child porn." Below JOSEPH SCHMIDT's photo, THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER wrote the words "His phone had photos showing molestation of a sleeping prepubescent minor and a trove of other children in sex acts[.]" This article was seen by readers in Palm Beach County, Florida.

    5.    The highly defamatory article published by THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER was subsequently republished by multiple media outlets. One of the major media outlets that ran the story is headquartered in Palm Beach County, Florida.

    6.    The Plaintiff, JOSEPH SCHMIDT, is a resident of San Diego County, California.

    7.    Venue is proper in Palm Beach County, Florida, because the Defendant conducts business in Palm Beach County, Florida. Additionally, the Defendant has subscribers and readers in Palm Beach County, Florida. After seeing THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER's story, a media outlet located in Palm Beach County, Florida ran THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER's article with the photo of JOSEPH SCHMIDT.

## GENERAL ALLEGATIONS

### I.   Background

8.      Leading Chief Petty Officer of the Special Operations Command JOSEPH SCHMIDT ("Officer Schmidt") is a highly-decorated Navy SEAL who has proudly served this country for the last 23 years.

9.      Officer Schmidt is active duty in SEAL Team 1 based out of San Diego County, California. He lives with his wife and children.

10.     Officer Schmidt has an exemplary military record and he has received numerous commendation medals. Officer Schmidt has received a citation of valor for combat overseas and he was named the "Sailor of the Year" in both 2009 and 2011. Officer Schmidt has also been awarded the Army Commendation Medal, the Navy and Marine Corps Commendation Medal with Valor (two times), the Navy and Marine Corps Achievement Medal (seven times), the Combat Action Ribbon, the Navy Good Conduct Medal (five times), and the Instructor of the Quarter in 2008 and 2009.

11.     Officer Schmidt was deployed to active combat in 2002 and 2003.

12.     Officer Schmidt works with the Make a Wish Foundation and regularly visits hospitals to lift the spirits of gravely ill children. In addition to his work in the community as a SEAL, Officer Schmidt spends a significant amount of his free time volunteering at his children's school and working with underprivileged kids. He also created a program called Navy Seal Scout Team that has been instituted in many different schools to motivate and assist local youth. Put simply, Officer Schmidt has dedicated his life to serving others.

AMENDED COMPLAINT
Schmidt, Joseph vs. The Washington Newspaper Publishing Company, LLC d/b/a Washington Examiner.
Case No.: 50-2018-CA-002509-XXXX-MB-AI
Page 4 of 16

## II.    The Washington Newspaper Publishing Company LLC d/b/a Washington Examiner Article

13.    On April 21, 2017, THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER wrote a story about a Navy SEAL who had been charged with committing absolutely heinous crimes against children and engaging in bestiality. For reasons yet to be determined, THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER recklessly published the story with a photo of Officer Schmidt instead of a photo of the actual predator.

14.    THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER placed a large headline over the photo of Officer Schmidt that read "Navy SEAL charged with making child porn" Below Officer Schmidt's photo, THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER wrote the words "His phone had photos showing molestation of a sleeping prepubescent minor and a trove of other children in sex acts..."

15.    THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER published Officer Schmidt's photo on the homepage of THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER's website with the headline "Navy SEAL charged with making child porn" printed over his photo. THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER placed a caption below Officer Schmidt's photo on the homepage of its website which read "His phone had photos showing molestation of a sleeping prepubescent minor and a trove of other children in sex acts..."

16.     THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER touts that it has millions of readers who visit the homepage of its website each day.

17.     THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER intended for the shocking allegations and headline to entice readers to read the full article. THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER placed a link to the full article under Officer Schmidt's photo and statements accusing Officer Schmidt of sexually abusing small children.

18.     Once the reader followed the link, the full story with Officer Schmidt's photo pulled up with additional details and even more disgusting allegations.

19.     The full story detailed perverse acts committed by a sexual predator and former Navy SEAL from Virginia Beach—someone that Officer Schmidt did not even know. The facts of the story include grotesque and horrific allegations accusing Officer Schmidt of sexually molesting a "prepubescent minor" and raping a woman. THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER accused Officer Schmidt of taking videos of himself sexually assaulting children and possessing a "trove of other photos of children in sex acts." Later versions of the story run also stated that Officer Schmidt had engaged in bestiality by having sex with a dog.

20.     A reasonable person who saw the publication would logically assume that Officer Schmidt had been "charged with making child porn" and "had photos showing molestation of a sleeping prepubescent minor and a trove of other children in sex acts[.]" Further, readers would

AMENDED COMPLAINT
Schmidt, Joseph vs. The Washington Newspaper Publishing Company, LLC d/b/a Washington Examiner
Case No.:  50-2018-CA-002509-XXXX-MB-AI
Page 6 of 16

believe that the horrific acts outlined in the body of the article had also been committed by Officer

Schmidt.

21.    Officer Schmidt has never engaged in any of the abhorrent acts described in the

article—nor had he ever previously been suspected or accused of such things. Through no fault of

Officer Schmidt, THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a

WASHINGTON EXAMINER's negligent and sloppy reporting falsely identified him as the face

of a child predator and rapist.

22.    THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a

WASHINGTON EXAMINER's article quickly spread all over the internet. Trusting that THE

WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON

EXAMINER had done its homework and associated the correct photo to its article identifying a

child sex predator, multiple media outlets followed suit and published Officer Schmidt's photo on

their websites. Within a few minutes, the article—and Officer Schmidt's photo—went viral and

were being viewed by people all over the world. Multiple media outlets in Officer Schmidt's

community ran the story with his photo attached as a direct consequence of THE WASHINGTON

NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER's egregious

error. As a result, Officer Schmidt's reputation, built through a lifetime of military and community

service, was smeared in his community and throughout the world.

23.    Readers of the article called Officer Schmidt a "child molester," a "sicko," and a

"predator." They called for him to be *killed* and locked in prison. As the article began to spread on

Facebook, the comments got even more sickening and violent.

AMENDED COMPLAINT
Schmidt, Joseph vs. The Washington Newspaper Publishing Company, LLC d/b/a Washington Examiner
Case No.: 50-2018-CA-002509-XXXX-MB-AI
Page 7 of 16

24.     After some time passed, THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER realized that they posted the photo of a highly decorated military hero to its article and publically accused him of countless unspeakable crimes. Nevertheless, THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER did not even bother to print a retraction or tell its readers that its inexcusable blunder falsely identified an innocent man.

25.     Officer Schmidt and his family began getting calls from friends and acquaintances asking if the allegations that THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER had lodged against him were true. The Schmidt family was terrified to go outside for fear that someone would actually make good on their threats. Officer Schmidt called NCIS, the FBI, and the local police to warn them about the article and tell them that he and his family may need protection at their home. The Schmidt family was approached by people from their suburban neighborhood and at their son's middle school asking them about the child rape allegations and questioning why he was not in jail.

26.     After reading all of the death threats, Officer Schmidt bought a security camera system for his home and did not leave his home without a firearm. Officer Schmidt and his wife continue to live in fear. They were forced to sell their home and transfer their son to a different school.

27.     Officer Schmidt's reputation has been forever tarnished by the outrageous allegations that were lodged against him by THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER.

28.     Further, Officer Schmidt's photo is still associated with disgusting internet search terms to this day. As a result of the reckless errors of THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER, Officer Schmidt's photo is still one of the top results appearing in response to internet searches for "navy seal child rape", "military child rape" and "navy seal child porn."

29.     Like the people commenting on THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER article, Officer Schmidt agrees that child rapists are truly the most despicable people in our society. Being accused of something so heinous has had a profound effect on Officer Schmidt and caused him severe mental anguish, emotional distress, and anxiety.

30.     On July 26, 2017, Officer Schmidt contacted THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER and demanded that a retraction be printed within 24 hours. THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER did not even bother to respond to the request. To date, THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER has never printed a retraction or even apologized to Officer Schmidt.

## COUNT I – DEFAMATION AGAINST THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER

31.     Plaintiff, Officer Schmidt, incorporates paragraphs 1 to 30 as if each were fully set out in this Count.

AMENDED COMPLAINT
Schmidt, Joseph vs. The Washington Newspaper Publishing Company, LLC d/b/a Washington Examiner
Case No.: 50-2018-CA-002509-XXXX-MB-AI
Page 9 of 16

32.     THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER published false and defamatory statements with Officer Schmidt's photo and published it to millions of its readers.

33.     THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER article, its contents, and associated photo were not privileged in any manner.

34.     THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER's written statements associated with Officer Schmidt's photo were made with reckless disregard for their truth or falsity and with legal malice. Malice can be inferred from THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER's failure to publish a retraction as require by Fla. Stat. § 770.02. These statements are completely false and extremely defamatory. Officer Schmidt's reputation was damaged by the false allegations lodged by THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER.

35.     THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER negligently published Officer Schmidt's photo on an article identifying him as the perpetrator of heinous crimes that he did not commit.

36.     THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER knew or should have known that Officer Schmidt did not commit any of the crimes that THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER accused him of committing in the article.

AMENDED COMPLAINT
Schmidt, Joseph vs. The Washington Newspaper Publishing Company, LLC d/b/a Washington Examiner
Case No.: 50-2018-CA-002509-XXXX-MB-AI
Page 10 of 16

37.    Officer Schmidt is a private individual and not a public figure.

38.    THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a
WASHINGTON EXAMINER's false statements accusing Officer Schmidt of committing the
crimes outlined above are libel per se.

39.    THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a
WASHINGTON EXAMINER's publication of the statement along with Officer Schmidt's photo
has falsely tainted and permanently damaged Officer Schmidt's reputation.

40.    THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a
WASHINGTON EXAMINER's publication of the statement along with Officer Schmidt's photo
has caused Officer Schmidt severe mental and emotional distress and anxiety.

41.    As a direct and proximate result of the publication of these defamatory statements
and Officer Schmidt's photo, Officer Schmidt has suffered economic and noneconomic losses, lost
wages, damage to reputation, mental anguish, inconvenience, loss of capacity for the enjoyment
of life, personal humiliation, expense of medical care and treatment, and aggravation of a
previously existing condition.  The losses are permanent and continuing and Plaintiff will suffer
the losses in the future.

WHEREFORE, Officer Schmidt demands judgment in his favor and against THE
WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON
EXAMINER for:

a.    An award of all compensatory damages that Officer Schmidt has suffered
in the past and will suffer in the future, including incidental and

consequential damages resulting from THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER's publication in an amount to be determined at trial;

b.  An award of pre-judgment and post-judgment interest;

c.  An award of all costs and expenses Officer Schmidt has incurred and will incur in this action; and,

d.  An award of such other relief this Court may deem just, equitable and proper.

## COUNT II—DEFAMATION BY IMPLICATION

42.  Plaintiff, Officer Schmidt, incorporates paragraphs 1 to 30 as if each were fully set out in this Count.

43.  THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER recklessly published a photo of Officer Schmidt with the headline "Navy SEAL charged with making child porn" written above it. Below Officer Schmidt's photo, THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER wrote the words "His phone had photos showing molestation of a sleeping prepubescent minor and a trove of other children in sex acts..."

44.  A reasonable person who saw the publication would logically assume that Officer Schmidt had been "charged with making child porn" and "had photos showing molestation of a sleeping prepubescent minor and a trove of other children in sex acts..." Further, readers would

AMENDED COMPLAINT
Schmidt, Joseph vs. The Washington Newspaper Publishing Company, LLC d/b/a Washington Examiner
Case No.: 50-2018-CA-002509-XXXX-MB-AI
Page 12 of 16

believe that the horrific acts outlined in the body of the article had also been committed by Officer

Schmidt.

45.     The article under his photo detailed heinous allegations of sexual abuse against

women, children and animals.

46.     The article would clearly lead the reader to believe that Officer Schmidt was a rapist

and child sex predator.

47.     THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a

WASHINGTON EXAMINER acted in reckless disregard as to the falsity of the publicized matter

and the false light in which Officer Schmidt would be placed.

48.     Any reasonable person would be seriously offended and aggrieved by the publicity,

invasion of privacy and being associated with such vile conduct.

49.     THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a

WASHINGTON EXAMINER's publication of the statement along with Officer Schmidt's photo

has falsely tainted and permanently damaged Officer Schmidt's reputation.

50.     THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a

WASHINGTON EXAMINER's publication of the statement along with Officer Schmidt's photo

has caused Officer Schmidt severe mental and emotional distress and anxiety.

51.     THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a

WASHINGTON EXAMINER omitted the fact that Officer Schmidt was an innocent man and had

never been accused or suspected of being a child predator or abuser.

AMENDED COMPLAINT
Schmidt, Joseph vs. The Washington Newspaper Publishing Company, LLC d/b/a Washington Examiner
Case No.: 50-2018-CA-002509-XXXX-MB-AI
Page 13 of 16

52.     As a direct and proximate result of the publication of these defamatory statements and Officer Schmidt's photo, Officer Schmidt has suffered economic and noneconomic losses, lost wages, damage to reputation, mental anguish, inconvenience, loss of capacity for the enjoyment of life, personal humiliation, expense of medical care and treatment, and aggravation of a previously existing condition. The losses are permanent and continuing and Plaintiff will suffer the losses in the future.

WHEREFORE, Officer Schmidt demands judgment in his favor and against THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER for:

a.     An award of all compensatory damages that Officer Schmidt has suffered in the past and will suffer in the future, including incidental and consequential damages resulting from THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER's publication in an amount to be determined at trial;

b.     An award of pre-judgment and post-judgment interest;

c.     An award of all costs and expenses Officer Schmidt has incurred and will incur in this action; and,

d.     An award of such other and further relief this Court may deem just, equitable and proper.

AMENDED COMPLAINT
Schmidt, Joseph vs. The Washington Newspaper Publishing Company, LLC d/b/a Washington Examiner
Case No.: 50-2018-CA-002509-XXXX-MB-AI
Page 14 of 16

## COUNT III – INFLICTION OF EMOTIONAL DISTRESS

53.    Plaintiff, Officer Schmidt, incorporates paragraphs 1 to 30 as if each were fully set out in this Count.

54.    THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER recklessly inflicted mental suffering on Officer Schmidt by attaching his photo to accusations and an article that were highly defamatory and accused him of committing horrific sex crimes against children, women and animals and published it for millions of people to see. THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER was reckless when it published the photo and failed to research the story or the identity of Officer Schmidt before publishing his photo on an article about a man who committed crimes against women, children and animals.

55.    THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER knew or should have known that posting the photo with such an outrageously defamatory headline, caption and/or article would likely cause emotional distress.

56.    Publishing an innocent person's photo on an article which would lead a reasonable person to believe that the individual was a rapist and child sex predator is outrageous and atrocious conduct. Failing to identify the individual in the photo before attaching their face to the story is shameful and shocking.

57.    THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER's conduct and its publication of the photo and article caused Officer Schmidt severe emotional distress.

AMENDED COMPLAINT
Schmidt, Joseph vs. The Washington Newspaper Publishing Company, LLC d/b/a Washington Examiner
Case No.: 50-2018-CA-002509-XXXX-MB-AI
Page 15 of 16

58.     The article would clearly lead the reader to believe that Officer Schmidt was a rapist and child sex predator.

59.     THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER's publication of the statement along with JOSEPH SCHMIDT's photo has falsely tainted and permanently damaged Officer Schmidt's reputation.

60.     THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER's publication of the statement along with Officer Schmidt's photo has caused Officer Schmidt severe mental and emotional distress and anxiety.

61.     As a direct and proximate result of the publication of these defamatory statements and Officer Schmidt's photo, Officer Schmidt has suffered economic and noneconomic losses, lost wages, damage to reputation, mental anguish, inconvenience, loss of capacity for the enjoyment of life, personal humiliation, expense of medical care and treatment, and aggravation of a previously existing condition. The losses are permanent and continuing and Plaintiff will suffer the losses in the future.

WHEREFORE, Officer Schmidt demands judgment in his favor and against THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER for:

> a.     An award of all compensatory damages that Officer Schmidt has suffered in the past and will suffer in the future, including incidental and consequential damages resulting from THE WASHINGTON

NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON

EXAMINER's publication in an amount to be determined at trial;

b.  An award of pre-judgment and post-judgment interest;

c.  An award of all costs and expenses Officer Schmidt has incurred and will

incur in this action; and,

d.  An award of such other and further relief this Court may deem just,

equitable and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, JOSEPH SCHMIDT, hereby demands trial by jury on all issues so triable.

DATED this 4th of April, 2018.

JACK SCAROLA
Florida Bar No.: 169440
Primary E-Mail: _scarolateam@searcylaw.com
ANDREA A. LEWIS
Florida Bar No: 85331
Primary E-Mail: _terryteam@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Phone: (561) 686-6300
Attorneys for Plaintiff

Filing # 70257734 E-Filed 04/04/2018 05:04:41 PM

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT, IN AND
FOR PALM BEACH COUNTY, FLORIDA.

JOSEPH SCHMIDT,

CASE NO.: 50-2018-CA-002509-XXXX-
MB-AI

Plaintiff,

vs.

THE WASHINGTON NEWSPAPER
PUBLISHING COMPANY LLC d/b/a THE
WASHINGTON EXAMINER,

Defendant.

_____/

## NOTICE OF SERVING FIRST SET OF INTERROGATORIES TO DEFENDANT, THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC D/B/A WASHINGTON EXAMINER

Plaintiff, JOSEPH SCHMIDT, hereby gives notice that pursuant to Rule 1.340(e), Florida

Rules of Civil Procedure, that Interrogatories numbered 1 through 14 have been directed to

Defendant, THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a

WASHINGTON EXAMINER.

I HEREBY CERTIFY that a true and correct copy of the foregoing have been served with

the Summons and Amended Complaint.

JACK SCAROLA
Florida Bar No.: 169440
Primary E-Mail: _scarolateam@searcylaw.com
ANDREA A. LEWIS
Florida Bar No.: 85331
Primary E-Mail: _terryteam@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Phone: (561) 686-6300
Attorney for Plaintiff

Notice of Serving First Set of Interrogatories to Defendant
Schmidt vs. The Washington Newspaper Publishing Company LLC d/b/a Washington Examiner
CASE NO.: 50-2018-CA-002509-XXXX-MB-AI
Page 2 of 6

## INTERROGATORIES TO DEFENDANT, THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER

1.    What is the name and address of the person answering these interrogatories, and, if applicable, the person's official position or relationship with the party to whom the interrogatories are directed?

**ANSWER:**

2.    Please identify by name, address and employment position all agents and employees of the Defendant who had any involvement in researching, composing, reviewing and approving for publication, the headline, story, photograph and caption that are the subject of this action.

**ANSWER:**

3.    As to each individual identified in response to Question #2, state the following:

a)    The dates of the individual's initial employment by the Defendant;

**ANSWER:**

b)    The position into which the individual was initially hired, a description of the person's duties when initially hired, the date and nature of all changes in the person's job title and all changes in the persons duties;

**ANSWER:**

c)    A detailed description of all involvement the individual had in researching, composing reviewing and approving for publication, the headline, story, photograph and caption included in the article that is the subject of this action.

**ANSWER:**

Notice of Serving First Set of Interrogatories to Defendant
Schmidt vs. The Washington Newspaper Publishing Company LLC d/b/a Washington Examiner
CASE NO.: 50-2018-CA-002509-XXXX-MB-AI
Page 3 of 6

d)   When, how, why and by whom any modification was made to the subject article.

**ANSWER:**

4.   Describe in detail the process by which the photograph included in the subject article was located for inclusion in the subject article.

**ANSWER:**

5.   Describe in detail when, how and by whom the determination was made that the photograph was not an image of the perpetrator of the conduct reported in the article.

**ANSWER:**

6.   Described in detail all actions taken to address the erroneous inclusion of the photograph of the Plaintiff, including when, why and by whom the action was taken.

**ANSWER:**

7.   Identify by name and position all agents and employees who had any participation in receiving a request for a retraction on behalf of the Plaintiff and describe in detail the role played by each in the decision as to whether and how to respond to that request.

**ANSWER:**

Notice of Serving First Set of Interrogatories to Defendant
Schmidt vs. The Washington Newspaper Publishing Company LLC d/b/a Washington Examiner
CASE NO.: 50-2018-CA-002509-XXXX-MB-AI
Page 4 of 6

8.    Described in detail why a retraction was never published by the Defendant.

        **ANSWER**:

9.    Describe in detail the date and substance of every article and photograph ever published by the Defendant which included the name, image, or any reference to the Plaintiff.

        **ANSWER**:

10. Describe in detail all of the websites and/or social media sites where the Defendant posted the article while using the Plaintiff's photo.

        **ANSWER**:

11.    How many recorded views did the article receive while it was posted on THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER'S website with the Plaintiff's photo attached?

        **ANSWER**:

Notice of Serving First Set of Interrogatories to Defendant
Schmidt vs. The Washington Newspaper Publishing Company LLC d/b/a Washington Examiner
CASE NO.: 50-2018-CA-002509-XXXX-MB-AI
Page 5 of 6

12.    Did THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER share the Plaintiff's photo on any of its social media sites related to this article? If so, specifically identify which sites, what the posting said, and how many views each post received.

**ANSWER:**

13.    What time specifically did THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER publish the article with the Plaintiff's photo and what time was it taken down?

**ANSWER:**

14. How many people visited the homepage of THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER'S website during the time period described in Question #13?

**ANSWER:**

Notice of Serving First Set of Interrogatories to Defendant
Schmidt vs. The Washington Newspaper Publishing Company LLC d/b/a Washington Examiner
CASE NO.: 50-2018-CA-002509-XXXX-MB-AJ
Page 6 of 6

STATE OF_____)

COUNTY OF _____)

The foregoing instrument was acknowledged before me this _____ day of

_____, 20____, by _____, who is personally known to

me or who has produced_____ as identification and who did did/

not take an oath.

(SEAL)

_____
(Notary signature)

_____
(Notary name - print)
NOTARY PUBLIC, State of Florida

_____
(Serial number, if any)

Filing # 70257734 E-Filed 04/04/2018 05:04:41 PM

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT, IN AND
FOR PALM BEACH COUNTY, FLORIDA.

CASE NO.: 50-2018-CA-002509-XXXX-MB-AI

JOSEPH SCHMIDT,

      Plaintiff,

vs.

THE WASHINGTON NEWSPAPER
PUBLISHING COMPANY LLC d/b/a
WASHINGTON EXAMINER,

      Defendant.

_____/

### PLAINTIFF'S FIRST REQUEST TO PRODUCE TO DEFENDANT, THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER

Plaintiff, JOSEPH SCHMIDT, by and through the undersigned counsel, request, pursuant to Rule 1.350 of the Florida Rules of Civil Procedure, that Defendant, THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER, produce and permit Plaintiff's Counsel to inspect and copy each of the following documents*:

    1.    Any and all versions of the article titled "NCIS: Navy SEAL Possesses and Produced Child Porn on Phone."

    2.    Any and all comments on the article titled "NCIS: Navy SEAL Possesses and Produced Child Porn on Phone," including comments made on Facebook, Instagram and/or THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER's website.

Request to Produce to Defendant, The Washington Newspaper Publishing Company LLC d/b/a Washington Examiner
Schmidt, Joseph vs. The Washington Newspaper Publishing Company LLC d/b/a Washington Examiner
Case No.: 50-2018-CA-002509-XXXX-MB-AI
Page 2 of 3

3.      Any and all documents showing the amount of time the article titled "NCIS: Navy

SEAL Possesses and Produced Child Porn on Phone" was published on THE WASHINGTON

NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER website.

4.      Any and all documents showing the amount of people who visited THE

WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON

EXAMINER website on April 21, 2017, including a breakdown of user traffic by hour.

5.      Any and all internal emails and/or other communications discussing Joseph

Schmidt or the article "NCIS: Navy SEAL Possesses and Produced Child Porn on Phone."

6.      Any and all marketing and advertising materials in use by THE WASHINGTON

NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER in April of

2017. Specifically, the Plaintiff is requesting all materials that the Defendant provided to third

parties looking to advertise on THE WASHINGTON NEWSPAPER PUBLISHING COMPANY

LLC d/b/a WASHINGTON EXAMINER website or printed publications.

7.      Reports, documents, memorandums, notes, and witness statements that are in

anyway related to this case or the article "NCIS: Navy SEAL Possesses and Produced Child Porn

on Phone."

*"Documents" shall include, but not be limited to all non-identical copies of writings,

drawings, graphs, charts, photographs, phono-records, recordings, and/or any other data

compilations from which information can be obtained, translated, if necessary, by the party to

whom the request is directed through detection devices into reasonably usable form. "Documents"

Request to Produce to Defendant, The Washington Newspaper Publishing Company LLC d/b/a Washington
Examiner
Schmidt, Joseph vs. The Washington Newspaper Publishing Company LLC d/b/a Washington Examiner
Case No.:  50-2018-CA-002509-XXXX-MB-AI
Page 3 of 3

also include all electronic data as well as application metadata and system metadata. All

inventories and rosters of your information technology (IT) systems—e.g., hardware, software and

data, including but not limited to network drawings, lists of computing devices (servers, PCs,

laptops, PDAs, cell phones, with data storage and/or transmission features), programs, data maps

and security tools and protocols.

It is requested that the aforesaid production be made within thirty days of service of this

request at the offices of Searcy Denney Scarola Barnhart & Shipley, P.A., 2139 Palm Beach Lakes

Boulevard, West Palm Beach, Florida. Inspection will be made by visual observation, examination

and/or copying.

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via Service of

Process with the Summons and Amended Complaint.

JACK SCAROLA
Florida Bar No.: 169440
Primary E-Mail: _scarolateam@searcylaw.com
ANDREA A. LEWIS
Florida Bar No: 85331
Primary E-Mail: _terryteam@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Phone: (561) 686-6300
Fax:    (561) 383-9451
Attorneys for Plaintiff

Filing # 70257734 E-Filed 04/04/2018 05:04:41 PM

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT, IN AND
FOR PALM BEACH COUNTY, FLORIDA.

CASE NO.: 50-2018-CA-002509-XXXX-
MB-AI

JOSEPH SCHMIDT,

        Plaintiff,

vs.

THE WASHINGTON NEWSPAPER
PUBLISHING COMPANY LLC d/b/a THE
WASHINGTON EXAMINER,

        Defendant.

_____/

## NOTICE OF TAKING VIDEOTAPE DEPOSITION

TO:    Corporate Representative
        The Washington Examiner
        1152 15th Street NW, Suite 200
        Washington, DC 20005

Notice is hereby given pursuant to the provisions of Rule 1.310(b)(6), Florida Rules of

Civil Procedure and/or Rule 30(b)(6), Federal Rules of Civil Procedure of the intent to take the

videotape deposition of a representative of THE WASHINGTON EXAMINER concerning all

matters known or reasonably available to THE WASHINGTON EXAMINER with respect to the

following:

    The Corporate Representative with the most knowledge as to each of the areas described
    in Plaintiff's contemporaneously served Interrogatories.

    THE WASHINGTON EXAMINER is placed on notice of its obligation to prepare its

designated representative to respond on its behalf regarding the designated subject matters to the

Notice of Taking Videotape Deposition – Corporate Representative
Schmidt, Joseph vs. The Washington Newspaper Publishing Company LLC d/b/a Washington Examiner
Case No. 50-2018-CA-002509-XXXX-MB-AI
Page 2

extent information is known or reasonably available to it whether from current or former agents

and employees, documents, or other sources.

The testimony of the designee with regard to the designated subject matters shall be

deemed to be the testimony of THE WASHINGTON NEWSPAPER PUBLISHING COMPANY

LLC d/b/a WASHINGTON EXAMINER itself.

| NAME AND ADDRESS | DATE AND TIME | LOCATION |
|---|---|---|
| Corporate Representative of The Washington Newspaper Publishing Company LLC d/b/a Washington Examiner | June 1, 2018 at 10:00 a.m. | Phipps Reporting, Inc. c/o Metro Center 700 12th Street, N.W. Suite 700 Washington, DC 20005 |

**\*DUCES TECUM:  TO HAVE AND BRING WITH YOU AT THE TIME OF THE DEPOSITION THE FOLLOWING:**

1.      Any and all versions of the article titled "NCIS: Navy SEAL Possesses and Produced Child Porn on Phone."

2.      Any and all comments on the article titled "NCIS: Navy SEAL Possesses and Produced Child Porn on Phone," including comments made on Facebook, Instagram and/or THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER'S website.

3.      Any and all documents showing the amount of time the article titled "NCIS: Navy SEAL Possesses and Produced Child Porn on Phone" was published on THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER'S website.

Notice of Taking Videotape Deposition – Corporate Representative
Schmidt, Joseph vs. The Washington Newspaper Publishing Company LLC d/b/a Washington Examiner
Case No. 50-2018-CA-002509-XXXX-MB-AI
Page 3

4.    Any and all documents showing the amount of people who visited THE
WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON
EXAMINER'S website on April 21, 2017, including a breakdown of user traffic by hour.

5.    Any and all internal emails and/or other communications discussing Joseph
Schmidt or the article "NCIS: Navy SEAL Possesses and Produced Child Porn on Phone."

6.    Any and all marketing and advertising materials in use by THE WASHINGTON
NEWSPAPER PUBLISHING COMPANY LLC d/b/a WASHINGTON EXAMINER in April of
2017. Specifically, the Plaintiff is requesting all materials that the Defendant provided to third
parties looking to advertise on the Washington Examiner website or printed publications.

7.    Reports, documents, memorandums, notes, and witness statements that are in
anyway related to this case or the article "NCIS: Navy SEAL Possesses and Produced Child Porn
on Phone."

upon oral examination before Phipps Reporting, a Notary Public; or any other officer authorized
by law to take depositions in the State of Florida.  The oral examination is being taken for the
purpose of discovery, for use at trial, or for such other purposes as are permitted under the
applicable Statutes or Rules.

*"Documents" shall include, but not be limited to all non-identical copies of writings,
drawings, graphs, charts, photographs, phono-records, recordings, and/or any other data
compilations from which information can be obtained, translated, if necessary, by the party to
whom the request is directed through detection devices into reasonably usable form. "Documents"
also include all electronic data as well as application metadata and system metadata. All

Notice of Taking Videotape Deposition – Corporate Representative
Schmidt, Joseph vs. The Washington Newspaper Publishing Company LLC d/b/a Washington Examiner
Case No. 50-2018-CA-002509-XXXX-MB-AI
Page 4

inventories and rosters of your information technology (IT) systems—e.g., hardware, software and

data, including but not limited to network drawings, lists of computing devices (servers, PCs,

laptops, PDAs, cell phones, with data storage and/or transmission features), programs, data maps

and security tools and protocols.

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via Service of

Process with the Summons and Amended Complaint.

JACK SCAROLA
Florida Bar No.: 169440
Primary E-Mail: _scarolateam@scarcylaw.com
Andrea A. Lewis
Florida Bar No.: 85331
Primary E-Mail: _terryteam@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley, P.A. 2139 Palm
Beach Lakes Boulevard
West Palm Beach, Florida 33409
Phone: (561) 686-6300
Fax:    (561) 383-9441
Attorneys for Plaintiff

cc:    Phipps Reporting
       scheduling@phippsreporting.com

**E-TRANSCRIPT, ASCII, CD AND/OR DVD REQUESTED.**

Notice of Taking Videotape Deposition – Corporate Representative
Schmidt, Joseph vs. The Washington Newspaper Publishing Company LLC d/b/a Washington Examiner
Case No. 50-2018-CA-002509-XXXX-MB-A1
Page 5

## AMERICANS WITH DISABILITIES ACT.

"If you are a <u>person with a disability</u> who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Tammy Anton, Americans with Disabilities Act Coordinator, Palm Beach County Courthouse, 205 North Dixie Highway West Palm Beach, Florida 33401; telephone number (561) 355-4380 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."

"Si usted es una <u>persona minusválida</u> que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda.   Tenga la amabilidad de ponerse en contacto con Tammy Anton, 205 N. Dixie Highway, West Palm Beach, Florida 33401; teléfono número (561) 355-4380, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711."

"Si ou se yon <u>moun ki enfim</u> ki bezwen akomodasyon pou w ka patisipe nan pwosedi sa, ou kalifye san ou pa gen okenn lajan pou w peye, gen pwovizyon pou jwen kèk èd. Tanpri kontakte Tammy Anton, kòòdonatè pwogram Lwa pou ameriken ki Enfim yo nan Tribinal Konte Palm Beach la ki nan 205 North Dixie Highway, West Palm Beach, Florida 33401; telefòn li se (561) 355-4380 nan 7 jou anvan dat ou gen randevou pou parèt nan tribinal la, oubyen imedyatman apre ou fin resevwa konvokasyon an si lè ou gen pou w parèt nan tribinal la mwens ke 7 jou; si ou gen pwoblèm pou w tande oubyen pale, rele 711."

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

JOSEPH SCHMIDT,                                    Case No.:50-2018-CA-002509-XXXX-MB-AI

      Plaintiff,

vs.

THE WASHINGTON NEWSPAPER
PUBLISHING COMPANY LLC d/b/a THE
WASHINGTON EXAMINER,

      Defendant.

_____/

## MOTION FOR EXTENSION OF TIME TO RESPOND TO
## PLAINTIFF'S AMENDED COMPLAINT

Appearing specially for the limited purpose of this Motion, Defendant, THE

WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a THE WASHINGTON

EXAMINER ("Defendant"), by and through undersigned counsel and pursuant to the Florida

Rules of Civil Procedure, hereby files its Motion for Extension of Time to Respond to Plaintiff's

Amended Complaint, and, in support thereof, states as follows:

1.      Defendant was served in connection with this matter on April 12, 2018, thereby

making May 2, 2018, the deadline to respond to Plaintiff's Amended Complaint.

2.      The undersigned is currently in trial before the Honorable John J. Murphy III in

the case captioned *Robinson v. IHOP*, Case No. 09-42009, pending in the Circuit Court of the

Seventeenth Judicial Circuit in and for Broward County, Florida.  Accordingly, Defendant's

counsel is in need of additional time, up to and including, May 14, 2018, to prepare and file

Defendant's response.

1

3.     Defendant's counsel contacted Plaintiff's counsel in an attempt to obtain an extension of time as a professional courtesy; however, Plaintiff's counsel refused to consent to the same unless Defendant agreed to answer the Amended Complaint, rather than file a Motion to Dismiss.  Defendant would not accept Plaintiff's conditions, thereby necessitating the present Motion.

4.     Florida Rule of Civil Procedure 1.090(b) provides, in relevant part, as follows: "When an act is required or allowed to be done at or within a specified time by order of court, by these rules, or by notice given thereunder, for cause shown the court at any time in its discretion (1) with or without notice, may order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order . . . ."  Fla. R. Civ. P. 1.090(b).

5.     Defendant has shown good cause for the extension insofar as Defendant's counsel is currently in trial in another matter and needs additional time to prepare an appropriate response to Plaintiff's Amended Complaint.

6.     The present motion is made within the deadline prescribed by the Florida Rules of Civil Procedure, is made in good faith, and is not intended to cause undue delay.  Moreover, Plaintiff will not be unfairly prejudiced by the relief requested here insofar as the extension requested herein is *de minimum*.

WHEREFORE, Defendant, THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC d/b/a THE WASHINGTON EXAMINER, LLC, appearing specially and for the limited purpose of the present Motion, hereby respectfully requests that this Court grant it an extension of time up to and including May 14, 2018, to respond to Plaintiff's Amended Complaint and any other and further relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY pursuant to Florida Rule of Judicial Administration 2.516 that the foregoing has been furnished only by Electronic Mail this **30th** day of April, 2018, to all counsel on the attached service list.

> Lewis Brisbois Bisgaard & Smith LLP
> Attorneys for Defendant
> The Alhambra
> 2 Alhambra Plaza, Suite 1110
> Coral Gables, Florida 33134
> Telephone: 786.353.0210
> Facsimile: 786.513.2249

> BY: */s/ Todd R. Ehrenreich*
> TODD R. EHRENREICH
> FBN 945900
> BRIAN GOLDENBERG
> FBN 125001

## SERVICE LIST

JACK SCAROLA, ESQ.
E-mail: _scarolateam@searcylaw.com
ANDREA A. LEWIS, ESQ.
E-mail: _terryteam@searcylaw.com
Searcy Denny Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Blvd.
West Palm Beach, Florida 33409
Attorneys for Plaintiff

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

JOSEPH SCHMIDT,

Case No.:50-2018-CA-002509-XXXX-MB-AI

    Plaintiff,

vs.

THE WASHINGTON NEWSPAPER
PUBLISHING COMPANY, LLC d/b/a THE
WASHINGTON EXAMINER,

    Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND INCORPORATED MEMORANDUM OF LAW

Appearing specially and for the limited purpose of this Motion only, Defendant, THE WASHINGTON NEWSPAPER PUBLISHING COMPANY, LLC d/b/a THE WASHINGTON EXAMINER ("Defendant"), by and through undersigned counsel and pursuant to the Florida Rules of Civil Procedure, hereby files this Motion to Dismiss for Lack of Personal Jurisdiction, and, in support thereof, states as follows:

1.    This case arises out of an online news article that Defendant, a Delaware company headquartered in the District of Columbia, published on its website. Plaintiff, a California resident, subsequently filed suit in Palm Beach County, Florida, alleging that the subject article was defamatory.

2.    This Court must dismiss Plaintiff's Amended Complaint because the Court does not have personal jurisdiction over Defendant for the purposes of this lawsuit.

3.      The Court lacks *general* personal jurisdiction because: (1) Defendant is a limited liability company that is organized and operated under the laws of the State of Delaware, and (2) its principal place of business is in Washington, D.C.

4.      Moreover, even assuming, *arguendo*, that Defendant's alleged misconduct falls within the ambit of Florida's long-arm statute, the Court nonetheless cannot exercise *specific* personal jurisdiction over Defendant because doing so would run afoul of the requirements of due process.

5.      Because this Court has no basis for exercising personal jurisdiction, Defendant respectfully requests that this Court dismiss Plaintiff's Amended Complaint.

## BACKGROUND

The subject article was posted to Defendant's website on April 21, 2017, under the headline: "Navy SEAL charged with making child porn."  *See* Article, attached hereto as Exhibit 1.[1]  Initially, the article was published with a stock photograph of a Navy SEAL, who was later identified to Defendant as Plaintiff Joseph Schmidt ("Plaintiff").  *See id.*  The subject article discusses charges that were brought against another Navy SEAL, Gregory Kyle Seerdon, who ultimately pled guilty to molesting a young girl on camera.  *See id.*  Plaintiff's name was not mentioned anywhere in the article, and his picture was removed from the article almost immediately after it was posted to Defendant's website.  *See id.*  When Plaintiff's photograph was removed, it was replaced with a stock photograph of a computer hard drive.  *See id.*

The subject article does not reference any conduct that took place within the State of Florida.  *See* Exhibit 1.  Rather, the article discusses criminal charges brought against Seerdon,

---

[1] The Article is also available at https://www.washingtonexaminer.com/navy-seal-charged-with-making-child-porn.

who was stationed in San Diego, California.  *See* Exhibit 1.  According to the article, Seerdon was charged in a federal court in Virginia.  *See* Exhibit 1.  The charges stemmed from photographs and videos that were found on Seerdon's cell phone during the course of an NCIS investigation, which was initiated after a woman reported that Seerdon sexually assaulted her in a hotel room in Virginia.  *See* Exhibit 1.

## MEMORANDUM OF LAW

Courts recognize two types of personal jurisdiction: general and specific.  In the present case, neither type of personal jurisdiction exists.  Accordingly, the Court must dismiss Plaintiff's Amended Complaint.  When determining whether personal jurisdiction exists, Florida courts conduct a burden-shifting analysis.  *See Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 501–03 (Fla. 1989).  First, the court must determine whether the facts alleged in the complaint, if true, are sufficient to establish personal jurisdiction over the defendant.  *See id.*  "A defendant wishing to contest the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts must file affidavits in support of his position."  *Id.* at 502.  "The burden is then placed upon the plaintiff to prove by affidavit the basis upon which jurisdiction may be obtained."  *Id.*  "In most cases, the affidavits can be harmonized, and the court will be in a position to make a decision based upon facts which are essentially undisputed."  *Id.* at 502–03.  However, where the affidavits cannot be reconciled, the trial court must hold a "limited evidentiary hearing in order to determine the jurisdiction issue."  *Id.* at 503; *see Unger v. Publisher Entry Serv., Inc.*, 513 So. 2d 674 (Fla. 5th DCA 1987), *approved by* 554 So. 2d 499 (Fla. 1989).

## I.  GENERAL PERSONAL JURISDICTION

A "court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so

'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014), *quoted in BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). "The 'paradigm' forums in which a corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business." *BNSF Ry.*, 137 S. Ct. at 1558. However, the "exercise of general jurisdiction is not limited to these forums;" and, "in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *Id.* (quoting *Daimler*, 571 U.S. at 139 n.9).

In the present case, the Court cannot exercise general personal jurisdiction over Defendant because: (1) Defendant is organized under the laws of Delaware, and (2) Defendant's principal place of business is Washington, D.C.  *See* Affidavit of Robert A. Manzi, attached hereto as Exhibit 2, at ¶ 5.  Moreover, because Defendant did not have any employees in Florida and did not maintain any offices in the State at the time the subject article was published, this is not an "exceptional case" where Defendant's operations in Florida are "so substantial and of such a nature" as to render Defendant "at home" in Florida.  *Compare* Exhibit 2, at ¶ 6, *with BNSF Ry.*, 137 S. Ct. at 1558–59 (holding that a Montana court lacked general personal jurisdiction where the defendant railroad company was not incorporated in Montana, did not maintain its principal place of business in Montana, and did not engage in sufficient activity in Montana to establish general personal jurisdiction, even though the defendant had "over 2,000 miles of railroad track and more than 2,000 employees in Montana").  Therefore, this Court cannot exercise general personal jurisdiction over Defendant.

## II.  SPECIFIC PERSONAL JURISDICTION

Additionally, this Court lacks specific personal jurisdiction over Defendant in the present case.  When analyzing specific personal jurisdiction, courts apply a two-pronged test.  *See Venetian Salami Co.*, 554 So. 2d at 502.  First, the court must find that the complaint alleges sufficient facts to bring the action within the ambit of Florida's Long-Arm statute.  *See id.*  Second, the court must determine whether the defendant has sufficient "minimum contacts" with the forum–state to satisfy the requirements of due process.  *See id.* at 502.  "The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a state tribunal's authority to proceed against a defendant", *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011), and due process requires that a defendant have sufficient minimum contacts with Florida "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Venetian Salami Co.*, 554 So. 2d at 502 (quoting *Int'l. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Unless both of these tests are satisfied, a Florida court cannot exercise specific personal jurisdiction over a non-resident defendant.  *See id.*; *see also Russo v. Fink*, 87 So. 3d 815, 818 (Fla. 4th DCA 2012).

Even assuming, *arguendo*, that Defendant's alleged misconduct falls within the ambit of Florida's long-arm statute, this Court cannot exercise personal jurisdiction over Defendant without running afoul of the requirements of due process.  In specific personal jurisdiction cases, courts apply the "three-part due process test," which examines: (1) "whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws"; (2) "whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum"; and (3) "whether the exercise of

personal jurisdiction comports with 'traditional notions of fair play and substantial justice'". *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citations omitted).

### a. **Defendant Did Not Purposefully Avail Itself of the Privilege of Conducting Activities in Florida.**

In intentional tort cases, including defamation cases, "there are two applicable tests for determining whether purposeful availment occurred": (1) the *Calder* "effects" test, and (2) the "traditional purposeful availment analysis." *Louis Vuitton Malletier*, 736 F.3d at 1356. In cases involving tortious activity that occurred online, courts in Florida usually apply the so-called *Zippo* test in lieu of the traditional purposeful-availment analysis.[2]

#### 1. *"Effects" Test*

The "effects" test requires a "showing that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." *Oldfield v. Pueblo De Bahai Lora, S.A.*, 558 F.3d 1210, 1220 n.28 (11th Cir. 2009). Pursuant to the *Calder* "effects" test, courts lack specific personal jurisdiction over defendants in cases involving online publications where "the websites [are] directed to a national audience and [do] not specifically target Florida readers." *Bioheart, Inc. v. Peschong*, 2013 U.S. Dist. LEXIS 57259, at *14 (S.D. Fla. 2013) (citing *Fullsail, Inc. v. Spevack*, 2003 U.S. Dist. LEXIS 20631, at *21 (M.D. Fla. 2003); and citing *JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F. Supp. 2d 1363, 1367 (S.D. Fla. 1999) (finding that contacts that "link with equal strength the defendant to all states" are not enough to support personal jurisdiction)). In the present

---

[2] Federal courts in Florida frequently apply the *Zippo* test in cases similar to the present case. *See, e.g.*, *Bioheart, Inc. v. Peschong*, 2013 U.S. Dist. LEXIS 57259 (S.D. Fla. 2013); *Full Sail, Inc. v. Spevack*, 2003 U.S. Dist. LEXIS 20631, *10–12 (M.D. Fla. 2003). The Eleventh Circuit has not expressly adopted the *Zippo* test; however, it has held that elements of the *Zippo* test may properly be considered by a court when performing a jurisdictional analysis. *See Internet Solutions Corp. v. Marshall*, 611 F.3d 1368, 1371 n.1 (11th Cir. 2010).

6

case, the subject article was not specifically directed at a Florida audience, and therefore, the Court cannot exercise specific personal jurisdiction over Defendant.

The court's opinion in *Internet Solutions* is instructive because it is factually similar to the present case. *See* 2010 U.S. Dist. LEXIS 145503 (M.D. Fla. Sept. 29, 2010). There, the defendant, Marshall, was a private individual who resides in the State of Washington and who owned and operated a website on which she posted information about consumer-related issues regarding different companies. *Id.* at \*3. The plaintiff, ISC, was a Nevada for-profit corporation with its principal place of business in Orlando, Florida; and it owned and operated several websites related to employment recruiting and internet advertising, including VeriResume. *See id.* at \*3–4. ISC sued Marshall for posting allegedly defamatory statements on her website "to the effect that ISC engaged in criminal activity, such as 'phishing' and consumer fraud scams, in order to steal personal information from customers for purposes of identity theft." *Id.* at \*4. Specifically, ISC cited to an article that identified VeriResume as an affiliate of ISC and listed three Florida addresses associated with ISC. *Id.* The court also noted, "Of the viewers who commented on the VeriResume post, several appeared to have Florida addresses". *Id.*

In *Internet Solutions*, the court applied the *Calder* "effects" test and held that it lacked personal jurisdiction over the defendant. *See id.* The court noted that "the fact that Defendant's websites are equally accessible everywhere does not establish targeting of Florida" and that "visits to a website by Florida residents would not, without more, constitute sufficient minimum contacts." *Id.* at \*12 (quoting another case). In *Internet Solutions*, the court cited to *Revell*, an internet-defamation case out of the Fifth Circuit, and explained that, in *Revell*, the Fifth Circuit determined that "the *Calder* effects test was not met because the article did not target readers in the forum state and the forum state was not the focal point of the article or harm suffered." *Id.* at

*13–14 (internal quotation marks omitted).  The *Internet Solutions* court also distinguished *Revell* based on the fact that, in *Internet Solutions*, the subject post referenced three of ISC's addresses that were located in Florida, which arguably strengthened the plaintiff's argument in favor of exercising personal jurisdiction.  *Id.* at *15–16.  Ultimately, however, the court was not persuaded that these references to Florida addresses were sufficient to establish personal jurisdiction, noting, "Although ISC maintains offices in Florida, residents of any state are equally capable of utilizing ISC's recruiting services through the Internet.  Thus, an allegedly defamatory article about ISC hypothetically would target a national audience."  *Id.*  The court further explained, "Aside from the addresses, the article contains no other connection to Florida.  ISC does not demonstrate that Florida residents were the target audience or that it suffered a particular harm to its business generated from Florida.  Even though Florida residents may have posted in response to the article, personal jurisdiction cannot be based solely on the ability of a Florida resident to access the website."  *Id.* at *16.  Thus, the court stated that it was required to "distinguish between Internet contacts that target readers in a particular forum from contacts that 'merely link with equal strength the defendant to all states.'"  *Id.* at *16–17 (citation omitted).  Accordingly, the court held that it lacked personal jurisdiction because "[p]urposeful direction under *Calder*, as interpreted by the Fifth Circuit, has not been established."  *Id.* at *17.

The United States District Court for the Southern District of Florida reached a similar conclusion in *Bioheart, Inc. v. Peschong*, where the court held that it lacked personal jurisdiction over the defendants in a defamation case arising out of an online publication.  *See* 2013 U.S. Dist. LEXIS 57259 (S.D. Fla. 2013).  In that case, the plaintiff, Bioheart, was a publicly traded company that focused on the development and commercialization of cell therapies for the treatment of heart disease.  *Id.* at *1.  Bioheart was a Florida corporation with its principal place of business in

8

Broward County, Florida.  *Id.* at *3.  One of the defendants, Peschong, was a resident of California, and he allegedly posted a series of five defamatory statements about Bioheart on the message board of a website called Yahoo! Finance.  *Id.* at *2.  Bioheart filed suit against Peschong (and others), alleging various causes of action sounding in defamation.  *Id.* at *2–3.  Specifically, Bioheart claimed that "some of its prospective investors saw Peschong's posts, and that the posts had a negative effect on Bioheart's share price, future investment, and the perception of its management team."  *Id.* at *2.  Peschong and the other California defendants moved to dismiss for lack of personal jurisdiction.  The court applied the *Calder* "effects" test and granted the defendants' motion to dismiss, finding that it lacked personal jurisdiction over the defendant:

> [I]n the instant case, Bioheart provides no evidence that Yahoo! Finance generally, or Peschong's comments in particular, were purposefully directed at a Florida audience.  Even if the Court accepts that the comments were targeted at Bioheart's investors or potential investors, Bioheart is a publicly-traded company.  There was no reason for Peschong to have thought that Bioheart's investors would be located in Florida, as opposed to any other state.  Peschong's knowledge that Bioheart is located in Florida is insufficient to establish that his posts were expressly aimed at the state.  Accordingly, the Court concludes that Peschong does not have minimum contacts with Florida to support the exercise of personal jurisdiction.

*Id.* at *15 (internal citations omitted).

Like in *Internet Solutions* and *Bioheart*, the *Calder* "effects" test is not satisfied in the present case.  The subject article is not purposefully aimed at Florida readers insofar as the article is freely and equally accessible to all internet-using members of the public, regardless of where they reside.  *See* Exhibit 2, at ¶ 8.  Moreover, the subject article is clearly directed at a national audience, rather than a Florida-based audience, because the substance of the article has nothing to do with the State of Florida.  The subject article does not reference any conduct that took place within the State of Florida.  *See* Exhibit 1.  Rather, the subject article discusses charges that were brought against another Navy SEAL, Gregory Kyle Seerdon, who was stationed in San Diego,

California.  *See* Exhibit 1.  According to the article, Seerdon was charged in a federal court in Virginia.  *See* Exhibit 1.  The charges stemmed from photographs and videos that were found on Seerdon's cell phone during the course of an NCIS investigation, which was initiated after a woman reported that Seerdon sexually assaulted her in a hotel room in Virginia.  *See* Exhibit 1. Accordingly, in the case at bar, the Court lacks personal jurisdiction because "personal jurisdiction cannot be based solely on the ability of a Florida resident to access the website" and because Defendant's only contacts with Florida "'merely link with equal strength the defendant to all states.'"  *Id.* at *16–17 (citation omitted).  Because the subject article did not specifically target a Florida audience, it cannot be said that Defendant "aimed" its allegedly tortious conduct at Florida. Accordingly, this Court lacks personal jurisdiction pursuant to the *Calder* "effects" test and, therefore, should dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction.

### 2. *Zippo Test*

In addition to the "effects" test, courts may also consider the *Zippo* test as a part of their traditional purposeful-availment analysis.  The purpose of the *Zippo* test is to analyze the "constitutionality of basing personal jurisdiction on Internet activity . . . in light of the interaction between the host and the user and the commercial nature of the website."  *Internet Solutions Corp. v. Marshall*, 2010 U.S. Dist. LEXIS 145503, at *9 (M.D. Fla. Sept. 29, 2010).  In *Full Sail, Inc. v. Spevack*, the court explained the sliding-scale approach articulated in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997):

> On one end of the scale, a defendant clearly is subject to personal jurisdiction because it enters into online contracts with Internet patrons.  *Id.* at 1124.  For example, the Sixth Circuit found that, by knowingly entering into an online contract with an Ohio resident and repeatedly transmitting files via the Internet to the Ohio resident, the defendant purposefully directed his commercial activity to Ohio and thereby subjected himself to its jurisdiction.  *Id.* (summarizing *Compuserve, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996)).  In *Miami Breakers*, the court determined that an active site sufficient for personal jurisdiction is one that allowed a consumer

to enter into a contract with the defendant over the Internet, e.g., by allowing for order and purchase of items online.  140 F. Supp. 2d at 1329.

At the other end of the scale are passive Web sites.  *Zippo*, 952 F. Supp. at 1124.  A passive site is one that "does little more than make information available to those who are interested in it. . . ."  *Id.*  For example, a non-interactive site posting general information -- e.g., ticket information and a schedule of events -- is passive, for it does not permit a consumer to purchase items or enter into a contract online.  *Id.* at 1125 (describing *Bensusan Rest. Corp. v. King*, 937 F. Supp. 295 (S.D.N.Y. 1996)).  In *Mink v. AAAA Development LLC*, 190 F.3d 333 (5th Cir. 1999), the court found the site at issue passive because it did not permit the taking of orders online; rather a user had to print the order form from the Web site and remit it via regular mail.  *Id.* at 337.

In the middle of the scale are interactive sites that allow a user to exchange information with the host computer.  *ComputerUser.com, Inc. v. Tech. Publ'ns, LLC*, 2002 U.S. Dist. LEXIS 13453, 2002 WL 1634119 at *7 (D. Minn. July 20, 2002) (citation omitted).  A site is interactive if it allows a visitor to send and receive information via an online bulletin board or open forum.  *Revell*, 317 F.3d at 472 (finding the site's bulletin board to be interactive because a visitor could participate in an open forum that allowed the user himself to post an article).  In such a case, jurisdiction depends on the level of interactivity and the degree to which the information exchange is commercial.  *Id.*; *ComputerUser.com*, 2002 U.S. Dist. LEXIS 13453, 2002 WL 1634119 at *7.  In *ComputerUser.com*, the Court found that a site was interactive because it received thousands of online contestant applications for a "Sexiest Geek Alive" contest, contained interactive features such as a mandatory message board, and offered a free e-mail account which allowed a user to request promotional material and access special offers.  2002 U.S. Dist. LEXIS 13453, [WL] at *7-8.  Construing the facts in a light most favorable to the plaintiff, the court found that sufficient minimum contacts with the forum state existed.  2002 U.S. Dist. LEXIS 13453, [WL] at *8.

*Full Sail, Inc. v. Spevack*, 2003 U.S. Dist. LEXIS 20631, *10–12 (M.D. Fla. 2003); *see also*

*Internet Solutions Corp.*, 2010 U.S. Dist. LEXIS 145503, at *10 (noting that active websites may

be subject to personal jurisdiction; the exercise of personal jurisdiction over passive websites is

improper; and, for interactive websites, the propriety of personal jurisdiction depends on the level

of interactivity and commercial nature of the exchange of information that occurs on the website).

The *Internet Solutions* case, discussed above, also illustrates why this Court lacks personal

jurisdiction over Defendant pursuant to the *Zippo* test.  In *Internet Solutions*, the court held that

"the only interaction between the user and Marshall's website is the user's ability to post comments to Marshall's articles, to which Marshall can then post a response."  2010 U.S. Dist. LEXIS 145503, at *10–11.  "Thus," the court concluded, "the website at most could be described as an interactive site in the middle of the spectrum."  *Id.* at *11.  The court also rejected ISC's argument that "Marshall posted the allegedly defamatory statements to lure advertisers to the site to obtain income," explaining that, "[e]ven assuming that Marshall attempted to lure advertisers to her website by way of the defamatory statements, this commercial activity by itself likely would not be sufficient . . . ."  *Id.* at *11–12.  Therefore, the court held that "the exercise of personal jurisdiction based on the *Zippo* sliding scale is not proper."  *Id.* at *12.

In the present case, Defendant's website is passive for the purposes of the *Zippo* test.  Unlike the website at issue in *Internet Solutions*, Defendant's website does not permit visitors to comment on the articles.  *See* Exhibit 2, at ¶ 9.  Rather, Defendant's website merely disseminates newsworthy information about politics and current events; and, as such, it "does little more than make information available to those who are interested in it . . . ."  *See Zippo*, 952 F. Supp. at 1124, *quoted in Spevack*, 2003 U.S. Dist. LEXIS 20631, at *11.  Therefore, pursuant to the *Zippo* test, this Court cannot exercise personal jurisdiction over Defendant based solely on the fact that Defendant passively relayed information that was accessible in every state.  *See Internet Solutions Corp.*, 2010 U.S. Dist. LEXIS 145503, at *10 (noting the exercise of personal jurisdiction over passive websites is improper).

Even if this Court finds that Defendant's website is "interactive" and falls within the middle of the *Zippo* scale, the exercise of personal jurisdiction would, nonetheless, be inappropriate.  For interactive websites, "jurisdiction depends on the level of interactivity and the degree to which the information exchange is commercial."  *Internet Solutions Corp.*, 2010 U.S. Dist. LEXIS 145503,

at *12 (collecting cases).  As discussed above, Defendant's website is not interactive; however, to the extent the Court finds some degree of interactivity, the information exchanged on Defendant's website is not commercial in nature.  In particular, at all times pertinent, Defendant's website did not have any paid subscribers.  *See* Exhibit 2, at ¶ 8.  Additionally, even assuming Defendant derived any advertising revenue from its website during the short period of time that the subject article was posted in its original form, this limited commercial activity—i.e., incidental advertising revenue that is not specifically attributable to the subject article—would not be sufficient to justify the exercise of personal jurisdiction.  *See Internet Solutions Corp.*, 2010 U.S. Dist. LEXIS 145503, at *11–12.  Accordingly, pursuant to the *Zippo* test, this Court lacks personal jurisdiction over Defendant and should, therefore, dismiss Plaintiff's Amended Complaint.

### b.  Plaintiff's Claims Do Not Arise Out of or Relate to Defendant's Florida Contacts.

Further, this Court must also dismiss Plaintiff's Amended Complaint because Plaintiff's claims do not "arise out of or relate to" Defendant's contacts with the State of Florida.  "A fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum."  *Louis Vuitton Malletier*, 736 F.3d at 1355 (quoting *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010)).  Accordingly, the court's "inquiry must focus on the direct causal relationship between the defendant, the forum, and the litigation."  *Id.* at 1355–56; *see also Fraser*, 594 F.3d at 850 ("We have not developed a specific approach to determining whether a defendant's contacts 'relate to' the plaintiff's claims, but we recently held that '[n]ecessarily, the contact must be a "but-for" cause of the tort.'" (quoting *Oldfield v. Pueblo De Bahai Lora, S.A.*, 558 F.3d 1210, 1222–23 (11th Cir. 2009)).

For example, in *Internet Solutions*, the court found that the plaintiff's claims did not arise out of the defendant's contacts with Florida, and therefore, the exercise of personal jurisdiction

would run afoul of the defendant's due process rights.  *See* 2010 U.S. Dist. LEXIS 145503, at *17.

In so holding, the court explained, "Although Marshall posted Florida addresses associated with

ISC, it is not alleged that readers were drawn to the article because of ISC's connection to Florida."

*Id.*  Thus, the *Internet Solutions* court held that "Marshall's contacts with Florida do not indicate

that she purposefully availed herself of the privilege of conducting activities in Florida or should

reasonably anticipate being haled into a Florida court."  *Id.*

Similarly, in the present case, all of Plaintiff's claims arise out of the publication of the

subject article.  As discussed above, the subject article does not mention the State of Florida or

discuss any persons or conduct that took place in Florida.  *See* Exhibit 1.  Additionally, because

Defendant is a Delaware company with its principal place of business in Washington, D.C.,

Defendant's allegedly tortious conduct did not occur in Florida.  *See* Exhibit 2, at ¶ 5.  Defendant

did not dispatch any reporters to Florida in connection with the subject article, nor did it engage in

any other newsgathering activities related to the subject article within the State of Florida.  *See*

Exhibit 2, at ¶ 7.  Rather, the subject article was authored, edited, and posted to Defendant's

website by individuals working out of Defendant's office in the District of Columbia.  *See* Exhibit

2, at ¶ 7.  Further, at all times since the subject article was posted to Defendant's website, it has

been freely and equally accessible to all internet-using members the public, regardless of their

place of residency.  *See* Exhibit 2, at ¶ 8.  Therefore, it cannot be said that Defendant's contacts

with Florida are the "but-for" cause of the torts alleged in Plaintiff's Amended Complaint.  *See*

*Fraser*, 594 F.3d at 850.  To the contrary, the subject article has no particular relationship to the

State of Florida, and Plaintiff cannot argue that any "readers were drawn to the article because of"

Defendant's "connection to Florida."  *See Internet Solutions Corp.*, 2010 U.S. Dist. LEXIS 145503, at *17.

Moreover, at all times pertinent hereto, Plaintiff was and is domiciled in California, and thus, Florida is "not the focal point of the article or harm suffered." *See Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002), *quoted in Internet Solutions Corp. v. Marshall*, 2010 U.S. Dist. LEXIS 145503, at *13–14 (M.D. Fla. Sept. 29, 2010); *see also Sovereign Offshore Servs., LLC v. Shames*, 2017 U.S. Dist. LEXIS 123514, at *8–9 (S.D. Fla. 2017) (holding that the court lacked personal jurisdiction in an online-defamation case where Florida was not the "focal point" of the online posts because the "posts do not identify Plaintiffs as being based in Florida, nor do they identify the office locations of any other Florida company mentioned").  Accordingly, none of Plaintiff's claims arise out of relate to Defendant's contacts with Florida, and therefore, this Court lacks personal jurisdiction over Defendant.

### c.  Exercising Jurisdiction Over Defendant Would Violate Traditional Notions Fair Play and Substantial Justice in the Present Case.

In order to comply with the requirements of due process, courts must also determine whether the exercise of personal jurisdiction comports with the traditional notions of "fair play and substantial justice." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985).  Courts must consider the five *Burger King* factors in making this determination: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.  *Id.* at 477.

Both *Internet Solutions* and *Bioheart*, discussed above, demonstrate that this Court cannot exercise personal jurisdiction over Defendant in the present case without offending traditional notions of fair play and substantial justice.  In *Internet Solutions*, the court analyzed the *Burger King* factors and held that, even if the plaintiff had established that the defendant had minimum

15

contacts with Florida, "the exercise of jurisdiction over Marshall would offend traditional notions of fair play and substantial justice." 2010 U.S. Dist. LEXIS 145503, at *18. The *Internet Solutions* court explained the application of the *Burger King* factors as follows:

> The burden on Marshall, who resides in Washington, weighs against exercising jurisdiction. As Marshall states in her Declaration, the fact that the website is hosted out of her home in Washington suggests that relevant documents and evidence are also located in Washington. Although ISC maintains its principal place of business in Florida and is authorized to transact business in Florida, the Court cannot discern any other particular interest Florida has in resolving the dispute. *Goforit*, 513 F. Supp. 2d at 1333 (finding that the claim of a Nevada corporation operating a website service available nationally, with its principal place of business in Florida, did not result in Florida having a concern in the dispute). Because the three other factors do not weigh for or against jurisdiction in this forum, fair play and substantial justice would not be satisfied by litigation of the suit in Florida.

*Id.* at *19–20. Accordingly, the court found that it lacked personal jurisdiction over the defendant and, therefore, granted the defendant's motion and dismissed the case. *See id.*

In *Bioheart,* the court applied the *Burger King* factors and came to the same conclusion: "In this case, Peschong resides in California and would bear a substantial burden in defending this action in Florida." 2013 U.S. Dist. LEXIS 57259, at *16. "Moreover," the court explained, "although Bioheart maintains its principal place of business in Florida, Bioheart has not set forth any other particular interest that Florida has in adjudicating this dispute." Additionally, the court noted that "all of Peschong's alleged tortious actions took place while he was in California, and there is no showing that any of the evidence in this case would be located in Florida." *Id.* at *17. Finally, the court noted that the remaining *Burger King* factors were neutral and, therefore, held that "litigating this case in Florida would violate traditional notions of fair play and substantial justice, and the exercise of personal jurisdiction would be improper." *Id.* Accordingly, the *Bioheart* court granted the defendant's motion to dismiss for lack of personal jurisdiction. *See id.*

16

Like in *Internet Solutions* and *Bioheart*, weighing the *Burger King* factors in the present case demonstrates that the exercise of jurisdiction over Defendant would offend traditional notions of fair play and substantial justice.  Defendant would be substantially burdened if forced to defend this lawsuit in Florida.  Defendant is organized under the laws of Delaware, but its principal place of business is in the District of Columbia.  *See* Exhibit 2, at ¶ 5.  Accordingly, all Defendant's employees who were involved in authoring, editing, and posting the subject article are located in the District of Columbia.  *See* Exhibit 2, at ¶ 7.

Moreover, according to Plaintiff's Amended Complaint, Plaintiff is a resident of San Diego County, California, and the majority of the witnesses with information regarding Plaintiff's alleged damages are also likely located in San Diego County, California.  *See* Pl.'s Am. Compl., at ¶ 6; *see, e.g.*, Pl.'s Am. Compl., at ¶¶ 25–26 ("The Schmidt family was terrified to go outside for fear that someone would actually make good on their threats.  Officer Schmidt called NCIS, the FBI, and local police to warn them about the article and tell them that he and his family may need protection at their home.  The Schmidt family was approached by people from their suburban neighborhood and at their son's middle school asking them about the child rape allegations and questioning why he was not in jail. . . .  After reading all of the death threats, Officer Schmidt bought a security camera system for his home and did not leave his home without a firearm.  Officer Schmidt and his wife continue to live in fear.  They were forced to sell their home and transfer their son to a different school.").  Forcing Defendant to defend this action in Florida, where none of the pertinent evidence or witnesses are located,[3] would substantially burden Defendant.

---

[3] The only thing tying Florida to this cause of action is the West Palm Beach location of the law firm representing Plaintiff.  *Cf. U.S. ex rel. Urquilla-Diaz v. Kaplan Univ.*, 2009 U.S. Dist. LEXIS 128211, at *5 (M.D. Fla. 2009) (noting in the context of a motion to transfer for forum non conveniens that "the convenience of counsel is not a relevant factor in determining whether to transfer an action")

Additionally, Florida has no appreciable interest in adjudicating this dispute, as the substance of subject article has no connection to Florida, none of the parties reside in Florida, and none of the evidence or witnesses are located in Florida. Defendant's website is accessible anywhere in the world, and the mere fact that it can be accessed in Florida—just as it can be from any other state—does not support the assertion that Florida has any particular interest in the outcome of this case. *See Internet Solutions Corp.*, 2010 U.S. Dist. LEXIS 145503, at *18–20; *see also Bioheart*, 2013 U.S. Dist. LEXIS 57259, at *16–17. Moreover, Plaintiff's interest in obtaining convenient relief, and the interstate judicial system's interest in obtaining the most efficient resolution of controversies, will not be served if this case is litigated in a forum that has a minimal connection, if any, to Plaintiff's claims. To the contrary, the best way to ensure the efficient and convenient resolution of this case is to dismiss this action and allow Plaintiff to re-file in a venue that provides access to the pertinent evidence and witnesses, that has a greater connection to the substance of the subject article, and that does not force both parties to travel cross-country in order to litigate this case. Because the exercise of personal jurisdiction in the present case would offend the traditional notions of fair play and substantial justice, this Court must dismiss Plaintiff's Amended Complaint.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court grant its Motion to Dismiss for Lack of Personal Jurisdiction and grant any other and further relief the Court deems just and proper.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY pursuant to Florida Rule of Judicial Administration 2.516 that the foregoing has been furnished only by Electronic Mail this 11th day of May, 2018, to all counsel on the attached service list.

> Lewis Brisbois Bisgaard & Smith LLP
> Attorneys for Defendant
> The Alhambra
> 2 Alhambra Plaza, Suite 1110
> Coral Gables, Florida 33134
> Telephone: 786.353.0210
> Facsimile: 786.513.2249

BY: _/s/ Todd R. Ehrenreich_
TODD R. EHRENREICH
FBN 945900
BRIAN S. GOLDENBERG
FBN 125001

## SERVICE LIST

**Searcy Denny Scarola Barnhart & Shipley, P.A.**
Attorneys for _Plaintiff_
Jack Scarola, Esq.
Andrea A. Lewis, Esq.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
561.686.6300
_terryteam@searcylaw.com
_scarolateam@searcylaw.com

# Exhibit 1





**Complete D.C. Coverage * Weekly Video with Editor Must-Read Picks * More.** The Washington Examiner Magazine, Digital Edition.



**Digital Magazine Log In** | **Subscribe**

Thursday, May 10, 2018

# Navy SEAL charged with making child porn

by Travis J. Tritten | April 21, 2017 06:47 PM            



*Gregory Kyle Seerden's phone had photos showing the molestation of a sleeping prepubescent minor and a trove of other photos of children in sex acts, according to court documents. (AP Photo/Lilli Strauss)*
*Lilli Strauss*

A Navy SEAL has been charged in Virginia with making and possessing child pornography after a date rape investigation led to a search of his cell phone.

The Naval Criminal Investigative Service says Gregory Kyle Seerden, who was assigned to SEAL Team One in San Diego, had photos showing the molestation of a sleeping prepubescent minor. His phone also contained a trove of other photos of children in sex acts, according to court documents first published by CBS News.

The charges were filed in a Virginia Beach federal court on March 31. They were unsealed Thursday, CBS reported.



Seerdon was being investigated for a sexual assault when his commander at the SEAL team authorized investigators to seize his cell phone data for evidence.





[Ahead of the Trend: Insight into the evolution of the millennial generation](#)

Watch Full Screen to Skip Ads

images of child pornography they believed could have been gleaned from the Internet, according to the court document.

After obtaining a search warrant, NCIS ultimately discovered 78 images of children in pornographic poses or engaged in sex acts.



Investigators told the court they believe videos and photos on the phone were created by Seerdon and show him engaged in sexual acts near a sleeping child in early January.

NCIS began an initial investigation after a women reported she had been sexually assaulted by Seerdon at his hotel room on Joint Expeditionary Base Little Creek in Virginia Beach. The sailor was on temporary duty at the base.

The woman told investigators she had gone out with Seerdon and blacked out after drinking alcohol, only remembering that he had been on top of her, according to the court document.

She woke up at 4 a.m. and Seerdon told her they had had sex. Investigators said he dropped her off at a base gate and she reported the assault to a guard.

National Security   Child Abuse   News   Travis J. Tritten   Department of Defense   Child Pornography
Law   Pornography   Navy

# Exhibit 2

## <u>AFFIDAVIT OF ROBERT A. MANZI</u>

STATE OF COLORADO            )

CITY & COUNTY OF DENVER     )

BEFORE ME, the undersigned authority, personally appeared Robert A. Manzi, who after being first duly sworn, did depose and state as follows:

1.      I am over the age of eighteen (18) years and have personal knowledge of the facts contained herein.

2.      I am, and at all times relevant was, the Vice President and Secretary of The Washington Newspaper Publishing Company, LLC.

3.      I am executing this affidavit in connection with a lawsuit that was filed by Plaintiff Joseph Schmidt (hereinafter "Plaintiff") against The Washington Newspaper Publishing Company, LLC, d/b/a The Washington Examiner (hereinafter "Defendant").      The aforementioned lawsuit is captioned *Schmidt v. The Washington Newspaper Publishing Company, LLC d/b/a The Washington Examiner*, Case No. 50-2018-CA-002509-XXXX-MB-AI, and is pending in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (hereinafter "subject lawsuit").

4.      The subject lawsuit arises out of an online news article that was posted on Defendant's website on April 21, 2017 ("subject article").

5.      Defendant is a limited liability company that is organized under the laws of Delaware, and its principal place of business is located in the District of Columbia at 1152 15th Street, Northwest, Suite 200, Washington, D.C. 20005.

6.      When the subject article was published, Defendant did not have any employees in the State of Florida, nor did it maintain any offices in Florida.

7.     Defendant did not dispatch any reporters to Florida in connection with the subject article, nor did it engage in any other newsgathering activities related to the subject article within the State of Florida.  Rather, the subject article was authored, edited, and posted to Defendant's website by individuals working out of Defendant's office in the District of Columbia.

8.     Moreover, since the subject article was posted to Defendant's website, it has been freely and equally accessible to all internet-using members of the public, regardless of the state in which they reside.  At no point were visitors required to pay for access to the subject article, nor were they required to subscribe to Defendant's website in order to view the subject article. In fact, at all times pertinent, Defendant's website did not have any paid subscribers.

9.     At all times pertinent, visitors were not able to post any comments on Defendant's website relating to any of Defendant's articles, including the subject article.

FURTHER THE AFFIANT SAYETH NAUGHT.

Robert A. Manzi

Sworn to and subscribed before me
this __11th__ day of May, 2018.

Notary Public

CAROL J MILIOTES
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 19874137349
MY COMMISSION EXPIRES AUGUST 1, 2020

My Commission Expires: _August 1, 2020_

2